# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DORIS NOHEMI GARCIA HERNANDEZ,

Plaintiff,

v.

CHIPOTLE MEXICAN GRILL, INC.,

Defendant.

Civil Action No. 14-297 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, Doris Nohemi Garcia Hernandez, prevailed at trial on her claim of pregnancy discrimination and now seeks from her former employer, the defendant Chipotle Mexican Grill, a total of $838,122.00 in attorneys' fees and costs for 2073 hours of billed work. Pl.'s Pet. Att'ys' Fees & Costs ("Pl.'s Pet.") at 1, ECF No. 137. The parties agree that the plaintiff is entitled to attorneys' fees, *id.*, Def.'s Opp'n Pl.'s Pet. ("Def.'s Opp'n") at 1, ECF No. 139, and that most of the fees should be awarded based on the 2016–17 United States Attorney's Office Fee Matrix ("USAO *Laffey* Matrix"), Pl.'s Pet. at 10; Def.'s Opp'n at 1, but the defendant challenges a substantial number of hours billed by plaintiff's counsel as insufficiently documented or excessive and objects to the application of a higher billing rate, under *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000) ("LSI *Laffey* Matrix"), for 270 hours of senior attorney work in final preparation for and at trial. For the reasons set out below, the plaintiff's petition is granted in large part and denied in part.

## I. BACKGROUND

The facts underlying the present fee petition are undisputed. For almost two years, from April 2012, when the plaintiff filed an EEOC claim against the defendant, until shortly after the filing of the instant federal action, the plaintiff was represented, *pro bono*, by Debevoise &

Plimpton LLP ("Debevoise") and the Washington Lawyers' Committee ("WLC"). *See* Pl.'s Pet. at 8–9; *id.* Ex. C (Declaration of Peter Grossi, dated October 5, 2016 ("Grossi Decl.")) ¶ 1, ECF No. 137-3; *id.* Ex. G (Decl. of Christine Tschiderer, dated October 6, 2016 ("Tschiderer Decl.")) ¶ 16, ECF No. 137-7. In April 2014, two months after this case was filed, Debevoise withdrew as counsel, due to a potential conflict of interest, *see* Notice of Withdrawal, dated April 16, 2014, ECF No. 12; Tschiderer Decl. ¶ 16, and soon after, counsel from the firm Arnold & Porter LLP ("A&P"), entered an appearance on behalf of the plaintiff, Notice of Appearance, dated April 23, 2014, ECF No. 13.[1] A&P has provided *pro bono* representation of the plaintiff, along with WLC, for the last three years of litigation, including during discovery, the defendant's unsuccessful motion for summary judgment, and at trial.

The plaintiff's discrimination case presented particular circumstances that required significant work and staffing from plaintiff's counsel. First, the defendant is an established national corporation headquartered in Denver, Colorado, while the plaintiff was employed as a "relatively new serving line worker" at the defendant's restaurant in Washington, D.C., and as such, the plaintiff "was not in any position to inform her counsel on the practices and policies of" the defendant. Pl.'s Pet. at 4. Consequently, plaintiff's counsel was required "to expend considerable time and effort developing and documenting" the "practices and policies" of the defendant. *Id*. at 3 (citing Grossi Decl. ¶ 19(c); *see also* Def.'s Answer ¶ 10 (affirming that the defendant "has its corporate headquarters in Colorado"), ECF No. 15. Second, the plaintiff and other key witnesses in the case "spoke only Spanish, thereby requiring the use" of translators throughout the litigation, Pl.'s Pet. at 3 (citing Grossi Decl. ¶ 19(b)), increasing the amount of time and preparation required of plaintiff's counsel. Third, due to "[t]he high rate of employee

---

[1] As discussed below, the plaintiff does not seek any attorneys' fees for the work done by Debevoise during the entire two year period of that firm's representation. *See infra* Part III.A.

turnover at" the restaurant where the plaintiff worked, "and the fact that at least one key witness had left the United States entirely," plaintiff's counsel had "to search for remaining witnesses . . . and ultimately to develop facts through other witnesses still associated with" the defendant. *Id.* (citing Grossi Decl. ¶¶ 19(c)–(d)). Fourth, notably, the defendant "repeatedly changed its purported justification for terminating the defendant," which required counsel "to investigate and refute each different theory, primarily through the examination of" the defendant's own witnesses. *Id.* at 3 (citing Grossi Decl. ¶ 19(a)); *see also* Def.'s Opp'n at 13. Finally, after the defendant raised the potential conflict of interest that required Debevoise to withdraw as counsel two years into the litigation, A&P had to step in and learn the entire case, while defense counsel not only had the benefit of those two years as background in this case, but also has significant experience representing the defendant in other employment discrimination cases throughout the country. Pl.'s Pet. at 4; Grossi Decl. ¶ 19(e) (listing cases).

After three years of litigation before this Court that culminated in a four-day jury trial, the plaintiff prevailed on her claim that the defendant discriminated against her on the basis of her pregnancy, in violation of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000(e), *et seq*., and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01. The jury awarded her damages of $50,000.00 in compensatory damages and $500,000 in punitive damages, Compl. ¶¶ 1, 9, 31, ECF No. 1; Judgment on the Verdict, ECF No. 122, which was later reduced to a total of $390,000, including back pay, by joint stipulation of the parties, in light of the statutory cap on punitive damages, under 42 U.S.C. § 1981(b)(3)(D), *see* J. Stip., dated September 9, 2016, ECF No. 131; Minute Order, dated September 9, 2016. The plaintiff timely filed her petition for attorneys' fees and costs, seeking a

total of $838,122.00 in fees and costs, *see* Pl.'s Pet. at 1, which the defendant has opposed in part, *see generally* Def.'s Opp'n.

## II.  LEGAL STANDARD

Under the fee-shifting provision of the Civil Rights Act of 1964, courts may award "a reasonable attorneys' fee" to prevailing private parties in any action or proceeding to enforce equal employment discrimination statutes.  42 U.S.C. § 2000e-5(k).  In principle, "[a] reasonable fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys.'"  *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

The D.C. Circuit has developed a three-part analysis, the "lodestar" method, for assessing "appropriate fee awards under fee-shifting statutes in cases involving complex federal litigation." *Salazar v. District of Columbia*, 809 F.3d 58, 61 (D.C. Cir. 2015).  First, the court must determine the number of hours reasonably expended in litigation.  *Id.* (citing *Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995)).  Second, it must set the prevailing market rate, or lodestar.  *Id.; see also Covington*, 57 F.3d at 1107.  Finally, it must determine whether use of a multiplier is warranted.  *Salazar,* 809 F.3d at 61.  In determining the second factor of the "prevailing market rate," three sub-elements are relevant: "(1) 'the attorney['s] billing practices'; (2) 'the attorney['s] skills, experience, and reputation'; and (3) 'the prevailing market rates in the relevant community.'"  *Id.* (quoting *Covington*, 57 F.3d at 1107).  The prevailing market rate may be shown using evidence of the "attorneys' fee matrices," the "'most commonly used'" of which is the *Laffey* Matrix, which "sets out a general guideline for awarding attorneys' fees based on experience . . . adjusted for inflation." [2]  *Id.* at 62

---

[2]        Established in *Laffey v. Nw. Airlines, Inc.,* 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), the *Laffey* Matrix recommends a presumptive maximum hourly rate

(quoting *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015).  A "strong

presumption" applies "that the fee yielded by the now-ubiquitous 'lodestar' method, which bases

fees on the prevailing market rates in the relevant community, is reasonable."  *West*, 717 F.3d at

1034 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)).

"[T]he 'fee applicant bears the burden of establishing entitlement to an award,

documenting the appropriate hours, and justifying the reasonableness of the rates,' with the

opposing party remaining 'free to rebut [the] fee claim.'"  *Salazar v. District of Columbia*, 809

F.3d at 61 (quoting *Covington*, 57 F.3d at 1107–08)).  At that point, the burden shifts to the

opposing party to "provide specific contrary evidence tending to show that a lower rate would be

appropriate."  *Covington*, 57 F.3d at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans v.*

*Sec'y of Def.* ("*NASC*"), 675 F.2d 1319, 1326 (D.C. Cir. 1982)).

## III. DISCUSSION

The plaintiff seeks reimbursement of attorneys' fees for 2,073 billed hours of work

totaling $825,123.00 in attorneys' fees, which are comprised of: (1) $683,409.00 for 1517 hours

of attorney work and 232 hours of paralegal work billed at the applicable hourly rated under the

2016–17 USAO *Laffey* Matrix; (2) $47,430.00 for 270 hours billed at the higher LSI *Laffey*

Matrix rate for the work of the lead attorneys from A&P and WLC in final preparation for and at

trial; and (3) $94,284.00 for 324 hours of senior attorney work billed at the hourly rate for a first-

---

for attorneys engaged in "complex federal litigation," *id.* at 372.  In the years since it was initially proposed, the
*Laffey* Matrix has spawned two versions: (1) a version maintained by the U.S. Attorney's Office for the District of
Columbia, which is linked to inflation, as measured by the Consumer Price Index for all items in the Washington,
D.C. area ("USAO *Laffey* Matrix"); and (2) a version with slightly higher rates, which was first adopted in *Salazar
v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and approved by the D.C. Circuit, *Salazar v. District of
Columbia*, 809 F.3d at 62, that is adjusted for inflation using the more rapidly rising Legal Services Index of the
nationwide Consumer Price Index ("LSI *Laffey* Matrix").

year attorney under the USAO *Laffey* Matrix. Pl.'s Pet. at 1.[3] Despite the defendant's

characterization of the plaintiff's fee petition as "excessive and unreasonable," Def.'s Opp'n at 7,

the plaintiff does not seek reimbursement for any of the work done by Debevoise during the

entire two year period during that firm's representation, Pl.'s Reply Supp. Pet. Fees ("Pl.'s

Reply") at 13, ECF No. 140, or for 600 hours of time, "including 187 hours of [lead counsel's]

time . . . that arguably was not fully described," in order to "simplify the bill" and to "avoid []

litigation on litigation." Pl.'s Pet. at 8–9; Pl.'s Reply at 13–14; Pl.'s Reply Ex. 1 (Excluded Time

Entries for Garcia v. Chipotle ("Excluded Time Entries")), ECF No. 140-1.[4] Additionally, the

plaintiff concedes that all but 270 hours should be billed at the 2016–17 USAO *Laffey* rate,

despite the fact that "this and other courts have compensated work in Title VII cases at the

substantially higher [LSI *Laffey*] rates." Pl.'s Reply at 14 (citing *Makray v. Perez*, 159 F. Supp.

3d 55–56 (D.D.C. 2016)).

The defendant challenges the hours for which the pending fee petition seeks

reimbursement because plaintiff's counsel: (1) significantly overstaffed the case; (2) improperly

billed for clerical tasks and unsuccessful filings; (3) provided vague entries in support of the fee

petition; and (4) used impermissible block billing in documenting the hours spent on the case.

---

[3]        The plaintiff's claim for an award of $12,999 for costs, Pl.'s Pet. 14–15 is not disputed by the defendant, and consequently, the plaintiff is entitled to reimbursement of her litigation costs in this amount as provided by this Court's Local Civil Rule 54.1(d)(2).

[4]        The defendant has moved to strike the log of Excluded Time Entries filed by the plaintiff with her reply in support of her fee petition or in the alternative for leave to file a surreply. Def.'s Mot. Strike Pl.'s Reply Supp. Pet. Fees or Leave to File Surreply ("Def.'s Mot. Strike"), ECF No. 141. According to the defendant, this log is a "reply-stage evidentiary submission," for which the defendant has had no opportunity to "review or refute these billing entries." *Id.* at 1. The defendant's rationale for seeking to "refute" entries that the plaintiff has conceded are likely not reimbursable is unclear. In any event, this excluded time was in fact discussed generally in the plaintiff's initial petition, *see* Pl.'s Pet. at 6, and this log does not affect the analysis of the reasonableness of hours for which plaintiff's counsel does seeks reimbursement. Consequently, additional briefing on the issue is unnecessary and the defendant's motion to strike or for leave to file a surreply is denied. *See Ben-Kotel v. Howard Univ*, 319 F.3d 532, 536 (D.C. Cir. 2003) (noting that District Court has discretion to deny leave to file a surreply); *Akers v. Beal Bank*, 760 F. Supp. 2d 1, 3 (D.D.C. 2011) (same).

The defendant also argues that the plaintiff has not justified application of the LSI *Laffey* Matrix rate to the 270 hours spent by her two lead counsel in final preparation for and at trial.

Before turning to these specific disputes, the Court notes that "trial courts need not, and indeed should not, become green-eyeshade accountants" in evaluating the reasonableness of hours billed, and that the goal of fee shifting "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see also Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980) ("It is neither practical nor desirable to expect the trial court judge to have reviewed each paper in this massive case file to decide, for example, whether a particular motion could have been done in 9.6 hours instead of 14.3 hours."). With this guidance in mind, the defendant's challenges to the hours billed by plaintiff's counsel and to application of the LSI *Laffey* Matrix to a small portion (thirteen percent) of those hours are addressed.

### A. DEFENDANT'S CHALLENGES TO HOURS BILLED

The defendant criticizes plaintiff's counsel's billing practices as generally "fail[ing] to use billing judgment," Def.'s Opp'n at 1, prompting the defendant's four principle challenges to the hours billed and corresponding reductions in the fee petition. According to the defendant, plaintiff's counsel: (1) used "a completely unreasonable amount of attorney manpower to pursue this case," Def.'s Opp'n at 6, warranting a reduction in the plaintiff's requested fee award of $534,454.00 for 1,634.99 hours, *id.* at 18–19; (2) improperly billed for hours spent on "unsuccessful filings" and clerical work, warranting a reduction in the plaintiff's requested fee award of $38,877.06 for 110.98 hours of work, *id.* at 25–27; (3) provided only "vague time entries," warranting a reduction in the plaintiff's requested fee award of $58,224.60 for 122 hours, *id.* at 20–21; and (4) improperly used "block billed entries," warranting a reduction in the plaintiff's requested fee award of $278,673.00 for 1,140.75 hours, *id.* at 22–23. The defendant does not specify the extent to which these broad-stroke challenges target the same hours, but the

end result cannot be ignored: the total reductions sought by the defendant add up to $910,228.66, which is actually $72,106.66 *more* than the $838,122.00 sought in the plaintiff's fee petition. In other words, wholly accepting the defendant's arguments would be difficult to reconcile with the statutory entitlement of the prevailing party in a pregnancy discrimination lawsuit to reimbursement of her reasonable attorney's fees. *See* 42 U.S.C. § 2000e-5(k). Set against this backdrop, the defendant's specific arguments are discussed next.[5]

*1. The Amount of Hours Billed Are Reasonable*

The defendant takes issue with the staffing of the plaintiff's case, noting that the fee petition "includes billing for 10 attorneys" and "three paralegals," Def.'s Opp'n at 6. According to the defendant, this level of staffing was "completely unreasonable," since a "team of [two] attorneys and a paralegal was more than adequate to represent Plaintiff in this matter, particularly in light of [counsel's] litigation experience and [] experience in employment law." Def.'s Opp'n at 4; *see also id.* at 18–19.[6] While the defendant is correct that "reasonableness" is "the touchstone for an award of attorneys' fees," Def.'s Opp'n at 5, the defendant fails to demonstrate that plaintiff's counsel unreasonably staffed the plaintiff's case.

First, given the complexity of this case, the staffing and time spent vindicating the plaintiff's civil rights are not facially unreasonable. As already noted, plaintiff's counsel surmounted a number of obstacles that made this case notably challenging, including the

---

[5]     The defendant also argues that the attorneys' fees sought by the plaintiff are unreasonable because they are "more than double of what was ultimately awarded to the plaintiff," Def.'s Opp'n at 24; *see also id.* at 8, and because plaintiff's counsel represented the plaintiff *pro bono*, which provided non-pecuniary benefits to A&P. *Id.* at 15–16. The D.C. Circuit has rejected the defendant's argument that attorneys represent parties *pro bono* should be reimbursed at a lower rate than an attorney doing the same work for a private client, *Eley*, 793 F.3d at 105 ("[L]awyers who charge either reduced rates or on a *pro bono* basis . . . should receive fees based on the prevailing market rate charged by for-profit lawyers if they are doing the same type of litigation."). Moreover, the defendant concedes that the Supreme Court has "reject[ed] a rule of proportionality between [a] damages award and the attorneys' fee award," Def.'s Opp'n at 24; *see City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986).

[6]     Consistent with this assertion, the defendant goes so far as to assert that "the fee application should be limited to the time [] two attorneys properly billed and documented," *id.* at 19, which would result in "an estimated 60% cut in [the] petition to $330,000," *id.* at 4. This would be "rough justice" indeed.

8

plaintiff's limited familiarity with her former employer's policies and practices, the location of her former employer's headquarters and relevant witnesses in Colorado, the need for translators for the plaintiff and a number of witnesses who spoke only Spanish, the difficulty in locating witnesses given the high turn-over rate of employees for the defendant, the shifting justifications provided by the defendant for terminating the plaintiff, the withdrawal of Debevoise two years into the litigation, and the comparative knowledge of defense counsel regarding the defendant's employment practices and policies stemming from the same defense counsel representing the defendant in this and other employment cases.

Tellingly, the defendant does not discuss the actual time spent by each attorney simultaneously working on the case, only that ten attorneys worked on the case total, conflating the argument that the number of attorneys who worked on the case and the amount of work each of those attorneys did were unreasonable. The defendant fails to note that the ten attorneys and three paralegals who worked on the plaintiff's case did not do so simultaneously or for the duration of the case, and indeed, two of those attorneys and one paralegal replaced two other attorneys and one other paralegal during the course of the litigation. Pl.'s Reply at 4. Relatedly, three of the A&P attorneys for which plaintiff seeks fees performed only 35, 13, and 57 hours of work on the case respectively. Pl.'s Pet. App'x 1 ("Standard *Laffey* Matrix Time"), ECF No. 137. In sum, the defendant's reference to the total number of attorneys who worked on the case, without explaining the circumstances surrounding the representation, paints a misleading picture.

Further, the defendant's judgment that a "team of [two] attorneys and a paralegal was more than adequate to represent Plaintiff in this matter," Def.'s Opp'n at 4, is offered with little acknowledgement of the challenges confronted by plaintiff's counsel and is, consequently, is entitled to little weight. Moreover, the docket for this cases shows that the defendant had at least

four attorneys during the course of this litigation. *See* Minute Orders, dated June 18, 2014, January 20, 2015, July 7, 2016, (granting motions for three attorneys to enter appearances *pro hac vice* on behalf of the defendant); Answer (listing fourth attorney as counsel for the defendant). This number, which does not include any attorneys or staff who worked on the case for the defendant without entering an appearance before the Court, is certainly not determinative of what constitutes reasonable staffing from plaintiff's counsel, but it weighs against the defendant's staffing argument that only two plaintiff's attorneys were necessary. The defendant may certainly have preferred that plaintiff's counsel had staffed the case with fewer attorneys, but such wishful thinking is not the standard for determining whether the hours billed are reasonable.

Second, the defendant's two examples of unreasonable time spent on specific tasks, 255.8 hours spent in preparation of an opposition to a motion for summary judgment and for 17.2 hours spent in preparation and attendance at a deposition, do not demonstrate unreasonable billing. The defendant predicates its contention that the time plaintiff's counsel spent on the summary judgment opposition is unreasonable by comparing the 255.8 hours in this case and the time spent by the plaintiff in another case, *Thomas v. District of Columbia*, 908 F. Supp. 2d 233 (D.D.C. 2012), in drafting a motion for summary judgment. As an initial matter, the defendant fails to explain how the "255.8 hours" figure attributed to the plaintiff's counsel here was computed or to identify the specific entries relied upon by the defendant to reach this figure. Even assuming the figure is accurate, however, *Thomas* is distinguishable. In *Thomas*, a case brought under the Individuals with Disabilities Education Act ("IDEA"), the Court considered a magistrate judge's recommendation to reduce an award for "13.75 hours spent on moving for summary judgment" after "largely routine" administrative proceedings, Def.'s Opp'n at 8 (citing

*Thomas*, 908 F. Supp. 2d. at 249–50), and ultimately rejected the recommendation and instead granted the award for the full hours. *Thomas,* 908 F. Supp. 2d at 250. The relevance of IDEA cases generally to this case is questionable, as the D.C. Circuit has held that IDEA cases are distinguishable from cases involving "complex federal litigation," such as the one at bar. *See Salazar,* 809 F.3d at 64. Moreover, unlike *Thomas*, which involved "largely routine" administrative proceedings, drafting the opposition in this case was the first time plaintiff's counsel could review the full and extensive discovery in the case, which also "had the dual purpose of preparing the case for trial." Pl.'s Reply at 13.

The defendant's challenge to the 17.2 hours spent on a deposition is likewise unconvincing. Even though the deposition itself lasted less than two hours, Def.'s Opp'n at 7–8, the defendant fails to recognize that the deposition was likely short *because* counsel had adequately prepared and could avoid asking extraneous questions. The defendant further ignores that the witness deposed was an adverse witness, and that given the timing of the deposition during the discovery process, plaintiff's counsel had to review "voluminous records" produced by the defendant in order to "organiz[e] the relevant materials" and "outlin[e] for an efficient deposition." Pl.'s Reply at 7. The time spent by counsel preparing for an efficient deposition and for this litigation generally was not unreasonable.

Third, the defendant challenges the 114.65 hours spent by "seven attorneys and two paralegals" on "day three of the trial," as "another stark example of Plaintiff's counsel's excessive, redundant, or otherwise unnecessary billing practices." Def.'s Opp'n at 9. Other than this hyperbole, the defendant offers no analysis based upon the actual descriptions of the work performed by each of the billing individuals as to why these hours are "excessive." Even a cursory review of the descriptions makes clear that on the third day of trial, three attorneys

attended and participated in trial, hours that were eminently necessary. Two other attorneys billed as "support," and describe their tasks "back at the office," such as "prepar[ing] [a witness] cross-examination outline," "prepar[ing] exhibits," and "conduct[ing] cite checks." Pl.'s Reply at 5; *id.*, Ex. 1. The remaining two attorneys attended trial, and also prepared outlines for cross-examinations, drafted closing arguments, reviewed and revised exhibits, and prepared jury instructions. A&P's paralegal coordinated "legal logistical support for the legal team," which work did not need to be performed by a licensed attorney, and which was necessary for the work done by the attorneys at the trial. *Id.* [7] In contrast to the defendant's characterization of this work, the time spent by these members of the plaintiff's trial team were reasonable and done in furtherance of the plaintiff's case. [8]

### 2. *Plaintiff's Counsel Has Not Included Work That Is Categorically Not Reimbursable*

The defendant argues that plaintiff seeks fees for two categories of work for which she cannot be awarded attorneys' fees: fees for time spent on unsuccessful filings and for clerical work. Def.'s Opp'n at 22–26. The Court addresses each of these arguments in turn.

First, the defendant identifies two filings by the plaintiff—the plaintiff's opposition to the defendant's motion for a protective order, Pl.'s Resp. Def.'s Mot. Protective Order, ECF No. 23, and the plaintiff's motion for leave to file a surreply in response to the defendant's motion for summary judgment, Pl.'s Mot. Leave File Surreply Def.'s Mem. Supp. Mot. Summ. J., ECF No.

---

[7]      One paralegal billed simply for attendance at trial (8.00 hours), meeting with the team to debrief (1.00 hour) and meeting again with the team (0.75 hours). These hours, amounting to $1530.75, describe little tasking in furtherance of the plaintiff's case, and will be deducted from the plaintiff's fee petition.

[8]      The defendant also argues that the Court should not grant attorneys' fees for "training junior associates for hours mismanaged on a clear straightforward legal question," Def.'s Opp'n at 10–11, or for work that "lack[s] a near but for relationship with" the plaintiff's success at trial, *id.* (discussing briefly *Am Hosp. Ass'n v. Sullivan*, 1990 U.S. Dist. LEXIS 21219 *, 1990 WL 91808 (D.D.C. May 24, 1990) and *Tequila Centinela, S.A. de C.V. v. Bacardi & Co*., 248 F.R.D. 64 (D.D.C. 2008)). The defendant fails to specify which hours suffer from these alleged defects to facilitate the Court's review of the merits of this criticism, which is therefore rejected.

55—as "frivolously filed" and having "exceedingly low likelihoods of success." Def.'s Opp'n at 25. In the defendant's view, the plaintiff's requested fee petition should be reduced by $26,520.60 for the hours associated with plaintiff's counsel's two filings, as this work was "unsuccessful," *id.* at 25–26, and "did nothing to advance the case," *id.*

Even if these motions were "unsuccessful," however, the plaintiff would still be entitled to reimbursement of her attorney's fees. The defendant misunderstands the standard for evaluating whether a prevailing party can be awarded attorneys' fees for unsuccessful filings. While an award "should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief," the presence of "unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in remedying a breach of [her] civil rights." *Fox v. Vice,* 563 U.S. 826, 834 (2011). A court "should compensate the plaintiff for the time his attorney reasonably spent in achieving [a] favorable outcome," even if the plaintiff "failed to prevail on every contention." *Id.*

In the instant case, the filings targeted by the defendant were prepared and filed in furtherance of the plaintiff's claims, on which she was entirely successful at trial. In other words, the time spent on these filings was "reasonably spent in achieving [a] favorable outcome." *Fox*, 563 U.S. at 834. The defendant's unsupported assertion that these motions were frivolously filed notwithstanding, the plaintiff is entitled to attorneys' fees for hours billed preparing these two filings.[9]

Second, the defendant argues that the fee award should be reduced by $12,356.46 for 22 entries, reflecting 31.68 hours of work "spent by attorneys" doing "clerical [work], specifically

---

[9] The plaintiff does not contest, however, that 2.7 hours spent on an unfiled motion to compel, which was identified by the defendant, cannot be considered reasonably related to her success on the case, Pl.'s Reply at 22–23; and the Court will reduce the requested fee award by $915.30.

the filing of documents." Def.'s Opp'n at 26–27 (citing Ex. L ("List of Clerical Entries")), ECF

No. 139-12. Although the defendant is correct that "[a]s a general matter, clerical and

administrative services amount to non-billable overhead," *Merrick v. District of Columbia*, 134

F. Supp. 3d 328, 341 (D.D.C. 2015) (citing *Michigan v. United States EPA,* 254 F.3d 1087, 1095

(D.C. Cir. 2001)), the defendant mischaracterizes the entries identified as "reflect[ing] . . . the

filing of documents," Def.'s Opp'n at 26. The vast majority of the 22 entries describe the

drafting *and* filing of a number of documents. For example, an entry for 0.3 hours on February

16, 2016, states, "edit and file joint status report," and another entry for 1.6 hours on June 22,

2015, states, "finalize and file second motion for leave to file surreply." List of Clerical Entries

at 1. These entries reflect substantive work done on a filing. Consequently, the plaintiff's

requested fee award will not be reduced simply because her counsel included in a narrative that,

after editing and finalizing a document, the document was then filed.[10]

### 3.  *Plaintiff's Counsel's Entries Are Not Vague*

The defendant claims that plaintiff's counsel has provided "[v]ague time entries that do

not sufficiently document how time was spent" and that such entries "should be generally

stricken from the fee award," Def.'s Opp'n at 20–21, and in support provides a log of "122 hours

at a cost of approximately $58,224.60," that reflect a "conservative estimate of the total time

associated with these vague entries," *id.* at 21 (citing Exhibit F ("Vague Time Entries")), ECF

No. 139-6. The defendant highlights six of these entries in its brief, totaling 24.6 hours from the

same attorney, that represent a "general sample of vague entries" provided by the plaintiff in

support of her fee petition. *Id.*

---

[10]     The defendant does properly identify one example of billing for only clerical work, an 0.2 hour entry dated
April 12, 2015, for simply "[f]il[ing a] notice of availability." List of Clerical Entries at 1. As a result, the fee
request shall be reduced by $67.80.

To be sure, as support for a fee petition, a plaintiff must provide "supporting documentation" that is "'of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended.'" *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (per curiam)). Vague entries make it "impossible for the court to verify. . . the reasonableness of the billing[], either as to the necessity of the particular service or the [total] amount of time expended on a given task," *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990); *see also id.* ("[B]illing entries are not adequately documented . . .where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed.").

The defendant's vagueness argument nevertheless fails because, as demonstrated by the defendant's own examples, Def.'s Opp'n at 20–21, plaintiff's counsels' entries are not vague. The first three entries highlighted by the defendant describe a number of related tasks an attorney performed in preparing for "the Gottlieb deposition," such as "logistics for [the Gottlieb] deposition" and "script for Gottlieb deposition; revisions to same." *Id.* Far from being vague, these entries provide sufficient detail to evaluate the reasonableness of the time spent and, in fact, demonstrates reasonable and detailed billing practices. *Id.* The fourth entry, a 3.3 hour "meeting with [the plaintiff]" on September 27, 2014, occurred during the early stages of discovery prior to the plaintiff's deposition, and when read in the context of other contemporaneous entries, was part of ongoing meetings with the plaintiff regarding "discovery issues" prior to her and others' depositions. *Id.*; *see also* Time Entry Log at 5 (entries from September 20, 2014 to October 13, 2014). The remaining two entries highlighted by the defendant are not vague: these entries detail the various tasks performed to "[p]repare for [the]

pretrial conference," and "pretrial projects," including taking "notes on exhibits and deposition cuts concerning admissibility," "review[ing] motions in limine and final case cites," and preparing "cross examination outline revisions." *Id.* Much like the deposition entries, the defendant's criticism of these entries as "vague" falls flat since the entries provide sufficient detail to evaluate the reasonableness of the tasks performed in reaching a successful outcome for the plaintiff in this case.

### 4. *Plaintiff's Counsel Did Not Impermissibly Block Bill Entries*

The defendant claims that "Plaintiff's billing entries are replete with blocked billed entries," Def.'s Opp'n at 22, and in support provides a twenty-four page log of 341 entries, totaling $464,455.00 in attorneys' fees, purportedly block billed. Def.'s Opp'n at 23; *id.* Ex. G ("Block Billing Log"), ECF No. 139-6. According to the defendant, these 341 entries makes it "impossible to determine how much time was spent on each separate task, and whether or not the time expended was reasonable." Def.'s Opp'n at 23. Contrary to the defendant's characterization, however, review of the 341 entries reveals that the vast majority are not block billed, and any small number of block billed entries are insufficient to justify a reduction in the fee award the plaintiff seeks.

An attorney impermissibly block bills by "lumping multiple tasks into a single time entry" in a manner that "mak[es] it impossible to evaluate their reasonableness," *Tridico v. D.C.,* Civ No. 13-0937 (ESH), 2017 WL 398320, at *7 (D.D.C. Jan. 30, 2017) (quoting *Role Models*, 353 F.3d at 971). For this reason, block billing is disfavored when a court is prevented from determining "the nature of the services for which compensation is sought." *Copeland*, 641 F.2d at 891. At the same time, however, a fee petition "need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Shaw v. District of Columbia*, 210 F. Supp. 3d 46, 52 (D.D.C. 2016) (quoting

*NASC*, 675 F.2d at 327). As another Judge on this Court aptly explained, requiring an attorney to break down related tasks down to "every quarter hour or half hour of how they spend their time on civil rights cases" would produce "two undesirable results . . . : their fee petitions will be higher, and the lawyers will simply waste precious time doing menial clerical tasks." *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006).

Block billing is most troublesome in two circumstances. First, where a fee petitioner has prevailed only "on a portion of their claims." *DL v. Dist. of Columbia*, 256 F.R.D. 239, 245 (D.D.C. 2009) (*rev'd on other grounds by DL v. District of Columbia,* 713 F.3d 120, 129 (D.C. Cir. 2013). In this circumstance, block billing frustrates the Court's ability to separate time spent on successful and unsuccessful claims and to award fees accordingly. *See Smith*, 466 F. Supp. 2d at 158 (noting that Courts are less concerned when a lawyer describes "six or eight hours [spent] in one day 'researching and drafting' a brief dealing exclusively with issues on which her client has ultimately prevailed"). Second, even where a plaintiff is totally successful, extensive block billing is impermissible, as it interferes with the Court's ability to evaluate the reasonableness of billed hours spent on specific motions or filings. *Role Models,* 353 F.3d at 970 (reducing award by fifty percent where a "particularly serious" and "large number of entries," totaling "over 1000 hours" were block billed and vague). Where the use of block billing by a party who is completely successful is infrequent, a reduction may not be warranted at all. *See DL*, 256 F.R.D. at 245; *see also Tridico,* 2017 U.S. Dist. LEXIS 12173 at *17 ("Because the block billed entries . . . are relatively infrequent, the Court rejects the District's request to reduce [the plaintiff's] overall award by 5%."); *Fitts v. Unum Life Ins. Co. of Am.*, 680 F. Supp. 2d 38, 42 (D.D.C. 2010) (declining a reduction where only a "relatively small fraction" of entries

were block billed).  With this standard in mind, the defendant's argument concerning block billing is unpersuasive.

First, most of the entries listed by the defendant are simply not block billed.  The defendant appears to conflate entries in which plaintiff's counsel has provided greater detail with impermissible block billing.  For example, the defendant identifies as block billed, an entry for 0.3 hour, on July 20, 2016, describing "Review closing statement; email P. Grossi feedback re: same," Block Billing Log at 7;  an entry for 0.2 hours, on January 5, 2015, describing "Telephone call w/D. Garcia re. scheduling of conf call; correspondence w/co-counsel re. the same," *id*. 5; and an entry for 0.7 hours, on November 6, 2015, describing "Confer with P. Grossi regarding arguments for surreply; research EEOC position statement case law for surreply," *id*. at 10.  These entries, and the many entries like them, are not examples of block billing. Explaining the related tasks that went into drafting the closing statement, or in scheduling a conference call, or in drafting and researching a surreply is not block billing, but is detailing the specific tasks performed related to a larger overarching task.  The inclusion of greater detail in these entries does not "mak[e] it impossible" for the Court "to evaluate their reasonableness," and review of the 341 entries identified by the defendant reveals a similar pattern, such that the Court concludes that the majority of the entries are not block billed.

Second, the limited instances of block billing do not justify reducing the fee award for two reasons.  First, the defendant has not identified any hours spent on unsuccessful claims, *see generally* Def.'s Opp'n., and indeed the defendant cannot do so because the plaintiff was totally successful on her claims at trial.  *See*  Compl. ¶ 42; Judgment on the Verdict, ECF No. 124. Thus, any concerns about attorneys' fees for unsuccessful claims is inapplicable in this case. Second, only approximately ten entries on trial days appear to be block billed, but still describe

various tasks performed in furtherance of the plaintiff's success at trial, *see, e.g.,* Block Billing Log at 8, 18–19 (listing entries for trial days), and the remaining entries identified as block billed are all for short periods of time, *see e.g., id.* at 2 (entry for 0.9 hours, dated May 7, 2014, "Correspondence with P. Grossi and WLC about case strategy and settlement; call with client regarding testimony at DC council hearing"). These entries have minimal impact on the Court's overall ability to assess the reasonableness of the work done by plaintiff's counsel. Indeed, because the plaintiff was entirely successful on her claims at trial, and because these entries are so few, the plaintiff's total success outweighs any concerns raised by any small number of block billed entries. Consequently, the Court declines to reduce the fee award on this basis.

## B. THE PREVAILING MARKET RATE

The parties agree that the 2016–17 USAO *Laffey* rates should be used as the billing rate for the majority of hours billed by plaintiff's counsel, Pl.'s Reply at 8; Def.'s Opp'n at 13. Def.'s Opp'n at 1; *see also* Young v. Sarles, 197 F. Supp. 3d 38, 51 (D.D.C. 2016) (to compensate for "delayed payment of attorneys' fees," a court may "bas[e] the award on current rates (quoting *West*, 717 F.3d at 1034).[11] The parties further agree that the plaintiff's Title VII action qualifies as complex federal litigation for the purposes of determining the prevailing market rate. Pl.'s Reply at 15; Def.'s Opp'n at 13. The defendant disputes, however, the plaintiff's proposed reimbursement of 270 hours of work at the rates set out in the LSI *Laffey* Matrix.

---

[11] The defendant also challenges the application of the attorney rate to translation work performed by one of the plaintiff's attorneys. Def.'s Opp'n at 24–25; *see also* Grossi Decl. ¶ 19(b). While the work itself was reasonable in light of the undisputed errors made by other translators, work that could be performed by a non-attorney should not command a higher rate simply when performed by an attorney. Over the course of the litigation, the parties paid $650 per translator per day, with two translators working a full day. Pl.'s Reply at 21; *see also* Def.'s Opp'n Ex. A (Declaration of Abigail Nikta) ¶ 18, ECF No. 139-1. The Court accordingly reduces the award by the difference between the attorney rate and the $160 an hour translator rate, or $4,160.

The defendant does not challenge the first two factors that the Court must consider in determining the "prevailing market rate" that should apply to these hours: "(1) the attorney['s] billing practices" and (2) "the attorney['s] skills, experience, and reputation," *Salazar*, 809 F.3d at 61 (quoting *Covington*, 57 F.3d at 1107), and indeed, plaintiff's counsel from both A&P and WLC have provided undisputed declarations attesting to their professional experience including their experience in civil rights cases, and their customary hourly rates, which are at or above the rates listed in the LSI *Laffey* Matrix. Grossi Decl. ¶¶ 1–15 (describing professional experience and averring that "the hourly rate charged" by A&P's lead attorney is "more than the highest LSI *Laffey* enhanced rate of $826 per hour"); Tschiderer Decl. ¶¶ 2–15, 19–22 (describing professional experience and noting that WLC relies on the "[a]djusted *Laffey* Matrix" as laid out in *Salazar* "in setting its customary hourly rates"). Consequently, the Court turns to the third element relevant to determining the reasonable hourly rate for work performed by plaintiff's counsel, namely, the prevailing market rates for attorneys of comparable experience in complex federal litigation in the Washington, D.C. area. *See Salazar*, 809 F.3d at 61 (quoting *Covington*, 57 F.3d at 1107).[12]

In support of using the LSI *Laffey* rate, the plaintiff has provided, in addition to the aforementioned declarations from her lead counsel: (1) a declaration from a local attorney averring that the LSI *Laffey* Matrix "is within the bounds of what is customary in the marketplace in the Washington, D.C. metropolitan area," and that "[t]he hourly rates that are charged for defense work in the employment field are the same as those rates charged by

---

[12]     The plaintiff concedes two other rate challenges from the defendant: a reduction of $3,572.38 for work that was billed "when the attorney was on a lower step of the USAO *Laffey* Matrix," and a reduction of $2,254 for travel time that appears to have been billed at an improperly high rate. Pl.'s Reply at 24. Consequently, the plaintiff's fee petition will be reduced by $5,826.38. Thus, a total of $12,500.23 will be deducted from the plaintiff's requested fee award. *See supra* nn. 7, 9–11.

comparably experienced attorneys in other types of litigation in federal court," Pl.'s Pet. Ex. H

(Decl. of Steven Davidson ("Davidson Decl.")) at ¶¶ 1–8, 12–20, ECF No. 137-8; (2) a table of

rates charged by attorneys in the Washington, D.C. office of an international law firm, reflecting

rates at or above the LSI *Laffey* rates, Davidson Decl. Ex. A (Winston & Strawn LLP

Timekeeper Rates/Hours/Fees), ECF No. 137-8; (3) a 2014 survey summary chart of the average

rates charged by partners and associates at various major law firms in Washington, D.C.,

reflecting rates at or above the LSI *Laffey* rates, Davidson Decl. Ex. B (2014 National Law

Journal Billing Survey for Washington, D.C. Firms ("2014 Billing Survey")), ECF No. 137-8;

(4) a declaration from the economist who developed the LSI *Laffey* Matrix explaining the

methodology supporting the conclusion that the LSI *Laffey* Matrix rather than the USAO *Laffey*

Matrix more closely approximates the prevailing market rate for legal services in complex

federal litigation in the Washington, D.C. area, Pl.'s Pet. Ex. I (Decl. of Dr. Michael Kavanaugh

("Kavanaugh Decl."), ECF No. 137-9; and (5) citations to factually similar cases from this Court

in which attorneys' fees have been calculated using the LSI *Laffey* rates, Pl.'s Pet. at 11–14; Pl.'s

Reply at 14–17 (citing *Makray*, 159 F. Supp. 3d at 25 (granting $92,536 in attorneys' fees, billed

at the LSI *Laffey* rate, for 344 hours of work by lead counsel in final preparation for and at trial

in a Title VII gender discrimination case); *Young*, 197 F. Supp. 3d at 52 (granting attorneys' fees

at the "rates provided by the LSI/Salazar Matrix" for complex federal civil rights litigation in the

Washington, D.C. area)).[13]  The D.C. Circuit has recently held that closely analogous evidence

---

[13] The plaintiff also has provided a declaration from an attorney who works at one of the firms that represents
the defendant as evidence of the prevailing market rate.  Pl.'s Pet. Ex. J (Supplemental Decl. of Blanka K. Wolfe
("Wolfe Decl.")), ECF No. 137-10.  The declaration contains a list of rates charged by attorneys at the defendant's
counsel's law firm in a bankruptcy case in the Southern District of New York in 2012, showing rates that are "as
high, or higher, than the" LSI *Salazar* Matrix.  Pl.'s Pet. at 13 (citing Wolfe Decl. at 1).  The defendant opposes
consideration of this evidence. Def.'s Opp'n at 13. The Court agrees that the rates charged by defendant's counsel's
law firm in another city, five years ago, in a bankruptcy matter is of questionable relevance to the current prevailing
market rate for complex federal litigation in Washington, D.C.

was sufficient to support using the LSI *Laffey* Matrix in complex federal litigation. *See Salazar,* 809 F.3d at 65.

In *Salazar*, the plaintiffs submitted, in support of their fee petition: an "affidavit of the economist that developed the LSI *Laffey* Matrix," "billing rates tables demonstrating the difference between average national law firm rates and the LSI update to the *Laffey* Matrix," and "a 2012 National Law Journal Rates Survey show[ing] that the rates for partners in Washington, D.C. on the high-end of the market far exceed[] the rates in the LSI update." *Salazar*, 809 F.3d at 65.  Based on the evidence, and absent any rebutting evidence, the D.C. Circuit not only concluded that the LSI *Laffey* rates represent the "prevailing market rates for complex federal litigation" in Washington, D.C., but concluded that the LSI *Laffey* rates likely represent "a conservative estimate of the actual cost of legal services in this area." *Id.*  As in *Salazar*, the plaintiff here has provided evidence of the billing rates charged by similar law firms in the area, *see* Davidson Decl. ¶¶ 1–8, Winston & Strawn Timekeeper Rates/Hours/Fees; surveys of the rates charged by partners in similar firms in Washington, D.C., *see* 2014 Billing Survey; an affidavit from the economist that developed the LSI *Laffey* Matrix, *see* Kavanaugh Decl.; and citations to factually-similar cases in which the LSI *Laffey* Matrix was applied, Pl.'s Pet. at 12–14.

The defendant provides only cursory opposition to application of the LSI *Laffey* Matrix rates, despite being required to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F.3d at 1109–10.  The defendant fails to provide any actual evidence that the LSI *Laffey* rate is unreasonable in the context of any complex federal litigation, let alone on the facts of this case, providing no affidavits or declarations of its own, no surveys of any rates charged in the Washington, D.C. legal market, no economic analyses of the

prevailing market rate, or even examples of the rates it is charged by its own counsel for similar cases. In short, the defendant offers no evidence to rebut the plaintiff's evidence, but merely provides, in a footnote, a string cite to ten D.C. district court cases, all pre-dating the D.C. Circuit's opinion in *Salazar*, which it claims demonstrates "that the USAO *Laffey* Matrix is preferred over the [LSI *Laffey*] Matrix" in this Court. Def.'s Opp'n at 14 n.2. The defendant fails to discuss any of these cases, which are inapposite.

Only two of the cases cited by the defendant merit any discussion.[14] In *Heller v. D.C.*, 832 F. Supp. 2d 32 (D.D.C. 2011), a prevailing plaintiff in a constitutional rights case sought attorneys' fees above the USAO *Laffey* rate from the government predicated on a single survey of the national fees charged by a number of firms, a single declaration from a legal recruiter "familiar with the Washington, D.C. legal market," and the "standard billing rates of [the] opposing counsel." *Id.* The government provided its own affidavits and other evidence opposing application of this higher hourly rate. *Id.* In light of the "special caution" required of courts "when reviewing petitions to be paid by the government," and the limited and disputed evidence provided by the plaintiff, the Court concluded that the plaintiff did not "carr[y] his burden to establish that the rates he [was] requesting [were]" the relevant prevailing market rate, and the Court therefore awarded fees at the USAO *Laffey* rate. *Id.* at 46–50. Unlike *Heller*, the

---

[14] Five of the cases were brought under the IDEA, Def.'s Opp'n at 14 n.2 (citing *McAllister v. D.C.*, 53 F. Supp. 3d 55, 59 (D.D.C. 2014), *Sykes v. Dist. of Columbia,* 870 F. Supp. 2d 86, 95 (D.D.C. 2012); *Hayes v. D.C. Public Schools,* 815 F. Supp. 2d 134, 143 (D.D.C. 2011); *Rooths v. Dist. of Columbia*, 802 F. Supp. 2d 56, 61–62 (D.D.C. 2011); *DL*, 256 F.R.D. at 24), and as previously noted, *see supra* Part III.A.1, the D.C. Circuit has held that IDEA cases do not qualify as "complex federal litigation" and should be billed at a rate lower than the USAO *Laffey* matrix. *See Salazar,* 809 F.3d at 64; *see also Reed v. District of Columbia,* 843 F.3d 517, 525 (D.C. Cir. 2016); *id.* at 527 ("[W]ere this panel not bound by *Eley*, I would hold, as a matter of law, that IDEA litigation is sufficiently complex to warrant *Laffey* rates.") (Tatel, J. concurring)). Thus, denial of the LSI *Laffey* Matrix in those cases has little bearing here. Three other cases cited by the defendant do not concern complex federal litigation, let alone civil rights litigation, and none discuss the LSI *Laffey* Matrix. *See* Def.'s Opp'n at 14 n.2 (citing *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4 (D.D.C. 2013); *Queen Anne's Conservation Ass'n v. U.S. Dep't of State*, 800 F. Supp. 2d 191 (D.D.C. 2011); *Fraternal Order of Police, D.C. Lodge 1 v. Barry*, Civ. No. 08-462 (ESH/JMF), 2009 WL 430393 (D.D.C. Feb. 23, 2009)). They are likewise irrelevant here.

plaintiff in this case has provided sufficient evidence of the prevailing market rate consistent with the amount of evidence found persuasive in *Salazar*, and the defendant has offered no evidence whatsoever regarding the prevailing market rate.

The second case, *Berke v. Fed. Bureau of Prisons*, 942 F. Supp. 2d 71, 73 (D.D.C. 2013), is likewise distinguishable. In *Berke*, the prevailing plaintiff in a civil rights case was represented by both a large law firm and a non-profit organization, and the Court awarded the law firm fees at "their regular billing rates," and declined to grant the non-profit counsel fees billed at rates that "exceed[ed] even the rates sought by the private attorneys." *Id.* at 77. In this case, the lead attorney from A&P stated in his declaration that A&P "routinely bill[s] . . . rates higher than" either the USAO *Laffey* Matrix or the LSI *Laffey* Matrix, Grossi Decl. ¶¶17–18, and the defendant certainly is not arguing that the Court should follow the logic of *Berke* and award plaintiff's counsel from A&P the firm's customary rate in excess of either *Laffey* matrix. Further, WLC's lead counsel does not seek fees in excess of the rate charged by the A&P lead counsel, such that *Berke*'s conclusion that a non-profit attorney should not be awarded rates in excess of private co-counsel is irrelevant.

Moreover, even if these cases offered analysis applicable to the facts of this case, they pre-date the D.C. Circuit's opinion in *Salazar*, and as the D.C. Circuit noted in rejecting a similar argument in that case, "[t]he cases cited by the [defendant] are district court cases," which are "not binding precedent." *Salazar*, 809 F.3d at 65. Like the D.C. Circuit, this Court is not bound by other district court cases, but this Court is bound by the Circuit's decision in *Salazar*. [15]

---

[15]     The Court notes, as it did in *Young*, that the D.C. Council has "formal[ly] adopt[ed] the LSI [*Laffey*] Matrix," in certain employment law cases, which "provides additional support for the plaintiff's contention that this matrix generally reflects prevailing market rates for civil rights actions in the District." *Young*, 197 F. Supp. 3d at 49 n.6.

Based on the similar evidence provided by the plaintiff as in *Salazar,* with no rebutting evidence by the defendant, the Court has little difficulty concluding that the LSI *Laffey* Matrix properly reflects a reasonable, and conservative, estimate of the prevailing market rates, for complex federal litigation in the Washington, D.C. area. *Salazar*, 809 F.3d at 65; *see also Makray*, 159 F. Supp. 3d at 25 (concluding that *Salazar* "make[s] clear that the [LSI *Laffey*] Matrix supplies reasonable reimbursement rates in 'complex federal ligation'"); *Young*, 197 F. Supp. 3d at 52 (same). Accordingly, the defendant's objection to application of the LSI *Laffey* Matrix rates is rejected and this prevailing market rate will be applied to the challenged 270 hours sought in the plaintiff's fee petition.

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's motion for attorneys' fees is granted in part and denied in part. The plaintiff has demonstrated that the hours for which she seeks reimbursement are largely reasonable and that the LSI *Laffey* Matrix provides the prevailing market rate for the 270 hours spent by two of her counsel preparing for and at trial. Accordingly, after reduction of $12,500.23 from the original request of $838,122.00, the defendant shall pay to the plaintiff a total of $825,621.77 in attorneys' fees and costs incurred by the plaintiff in pursuing her successful pregnancy discrimination claim.

An appropriate Order accompanies this Memorandum Opinion.


Date: June 28, 2017


_____
BERYL A. HOWELL
Chief Judge